Mr. E. William Crotty Attorney for Halifax Medical Center Daytona Beach
QUESTION:
1. Does Halifax Hospital Medical Center have the authority to establish a not-for-profit corporation to provide employee staffing and management services?
 2. Is the Halifax Hospital Medical Center required to take competitive bids for the staffing and management of the hospital?
3. Are the employees of the not-for-profit corporation required to participate in the Florida Retirement System?
SUMMARY:
1. Halifax Hospital Medical Center has the authority to establish a not-for-profit corporation to provide employee staffing and management services to the district.
2. In the absence of a legislative directive requiring the Halifax Hospital Medical Center to competitively bid its contracts for the staffing and management of its facilities, contracts are not required to be competitively bid but may be regulated by administrative rule to assure that such contracting is not done in an arbitrary or capricious manner.
3. In light of the provisions of Ch. 121, F.S., and the rules of the Division of Retirement of the Department of Management Services implementing the chapter, the employees of the not-for-profit corporation would not appear to be covered by the Florida Retirement System.
AS TO QUESTION 1
The Halifax Hospital Medical Center (Center) was created in 1979 by special act as a special taxing district with all the powers of a body corporate.[1] The Center is authorized to establish, construct, operate, and maintain such hospitals, medical facilities, and other health care facilities and services as are necessary for the preservation of the public health and for use of the public of the district.[2]
In 1984, the special act was amended to provide that the Center had the authority to establish corporations pursuant to Ch. 617, F.S., under the control of the district and to enter into capital or operating leases.[3] In 1991, s. 7(3) of the Center's special act was amended to provide in part:
The district may form both not-for-profit and for-profit corporations. The for-profit corporations may only engage in health care-related activities. Only the not-for-profit corporations may be capitalized by the district and financially supported by the district.[4]
The Center is further authorized to use district funds to pay those expenses normally incurred in, among other things, establishing, expanding, and diversifying a modern integrated system for the delivery of health care services.[5] Such a system may consist of "hospitals, clinics, health maintenance organizations, ambulatory care facilities, managed care facilities, other alternative delivery systems, self-insurance, risk retention programs, captive insurance companies and support organizations."[6] Staffing and management services would appear to constitute expenses normally incurred in establishing an integrated system for the delivery of health care services.
In light of the above, I am of the opinion that the Center is authorized to form a not-for-profit corporation that would provide staffing and management services to the Center.
AS TO QUESTION 2
The general rule with regard to competitive bidding by public agencies is that, in the absence of any legislative requirements regarding the method of awarding public contracts, public officers may exercise reasonable discretion, and a contract may be made by any practicable method that will safeguard the public interest.[7]
Even in those instances where it has no duty to require bids in letting contracts, the public body must act in the public interest, and must be fair, honest, prudent, and exercise a wise discretion in the awarding of public contracts.[8]
However, as one Florida court stated, "[t]here is no common law rule requiring public agencies to let contracts through competitive bids. In the absence of specific constitutional or statutory requirements, a public agency has no obligation to establish a bidding procedure and may contract in any manner not arbitrary or capricious."[9]
I am not aware of any statute that generally requires the Center to submit a contract for staffing and management of its facilities to competitive bid.[10] The Consultants' Competitive Negotiation Act, s. 287.055, F.S., while applicable to the Center, requires competitive bidding for "professional services" which, as defined therein, do not encompass services such as the staffing and management of medical facilities.[11]
Thus, in the absence of a legislative directive requiring that competitive bids be taken when contracting for the staffing and management of its facilities, I am of the opinion such contracts are not required to be competitively bid but may be regulated by administrative rule to assure that such contracting is not done in an arbitrary or capricious manner.
AS TO QUESTION 3
Section 121.051, F.S., makes the Florida Retirement Act, Ch. 121, F.S., compulsory as to "all officers and employees, except elected officers who meet the requirements of s. 121.052(3), who are employed on or after December 1, 1970, of an employer other than those referred to in paragraph (2)(b)."[12] "Employer" is defined to mean:
[A]ny agency, branch, department, institution, university, institution of higher education, or board of the state, or any county agency, branch, department, board, district school board, or special district of the state . . . .[13] (e.s.)
Section 121.021(9), F.S., provides that a "special district" refers to an independent special district as defined in s.189.403(3), F.S., i.e., a local unit of special-purpose government within a limited boundary, created by general law, special act, local ordinance, or rule of the Governor and Cabinet, which is not a dependent special district.[14]
A not-for-profit corporation, although created by the Center, would not appear to constitute a special district under the above definitions. While the enabling legislation for the Center recognizes the Center's authority to create such a corporation, the act does not create the not-for-profit corporation.[15]
Moreover, the Division of Retirement of the Department of Management Services in carrying out its responsibilities to administer the Florida Retirement System, has adopted Rule60S-1.004(3), F.A.C., which expressly provides:
Participation in the Florida Retirement System shall not be permitted for:
* * *
(c) Officers and employees of any nonprofit association or corporation . . . .[16]
The Division of Retirement has advised this office it is of the opinion that the employees of the not-for-profit corporation are not covered by the Florida Retirement System. In light of the above, it appears that the employees of a not-for-profit corporation created by the district pursuant to its enabling legislation would not be required to participate in the Florida Retirement System.
RAB/tjw
[1] Chapter 79-577, Laws of Florida.
[2] Chapter 79-577, Laws of Florida, as amended by Chs. 84-539, 89-409, and 91-352, Laws of Florida.
[3] See, s. 2, Ch. 84-539, Laws of Florida, amending s. 3 of Ch. 79-577, Laws of Florida. Compare, s. 155.40, F.S., authorizing the reorganization of county, district, or municipal hospitals as not-for-profit corporations.
[4] See, s. 2, Ch. 91-352, Laws of Florida, amending s. 7(3), Ch. 79-577, Laws of Florida, which also prohibits the district and a not-for-profit corporation formed by the district from capitalizing for-profit corporations. Neither the district nor its not-for-profit corporations, however, are prohibited from entering good faith agreements to receive services, goods, and facilities from the for-profit corporation as long as the charge for such services, goods, and facilities is at fair market value. The district is further prohibited from holding in its name corporate stock issued by any for-profit corporation established by the district, but the stock of such for-profit corporations may be held by a not-for-profit corporation established by the district or by a third party in trust for the district under a written trust agreement. And see, s. 7(4), Ch. 79-577, Laws of Florida, as amended by s. 2, Ch. 91-352, Laws of Florida, placing certain limitations on the authority of a not-for-profit or for-profit corporation to enter into joint ventures and other cooperative projects with third party individuals and entities.
[5] Section 12, Ch. 79-577, Laws of Florida, as amended by s. 4, Ch. 91-352, Laws of Florida.
[6] Id.
[7] See, e.g., Marriott Corporation v. Metropolitan Dade County, 383 So.2d 662 (3 D.C.A. Fla., 1980); Ackman v. Dade County, 308 So.2d 622 (3 D.C.A. Fla., 1975) (no requirement that county employ statutory bidding procedure in granting a concession at airport); William A. Berbusse, Jr., Incorporated v. North Broward Hospital District, 117 So.2d 550 (2 D.C.A. Fla., 1960) (a public body is not required unqualifiedly to award a contract to the lowest bidder unless there exists a statutory requirement). And see, AGO's 84-29 (in absence of a special law or county ordinance, noncharter county is not required to take competitive bids prior to hiring a county attorney); 71-366.
[8] See generally, 72 C.J.S. (Supp.) PublicContracts s. 7.
[9] Volume Services Division of Interstate United Corporation v. Canteen Corporation, 369 So.2d 391, 395 (2 D.C.A. Fla., 1979); and see, William A. Berbusse, Jr., Incorporated v. North Broward Hospital District, supra.
[10] Compare, s. 20, Ch. 79-577, Laws of Florida, as amended by s. 7, Ch. 91-352, Laws of Florida, which requires that purchases of supplies, commodities, equipment, and materials, as well as the leasing of equipment for use in operating and maintaining the district, and all contracts for capital improvements to the district's property in excess of 10,000, shall be competitively bid, unless an emergency or other unusual condition would make the bidding procedure detrimental to the district or its patients or are obtainable only from one source. Contracts between the district and a third party for capital improvements owned and operated by the district in excess of 25,000 are required to be competitively bid except as provided therein.
[11] See, s. 287.055(2)(b), F.S., defining "agency" to include, among others, a political subdivision, and s. 1.01(8), F.S., defining "political subdivision" for purposes of the Florida Statutes, to include special districts. And see, s.287.055(2)(a), F.S., defining "professional services" to mean those services within the scope of the practice of architecture, professional engineering, landscape architecture, or registered land surveying.
[12] The statute recognizes certain exceptions; for example, for elected officers who meet the requirements of s.121.052(3) or for officers and employees of an employer referred to in s. 121.051(1)(b), F.S., a city or special district that has an existing retirement system covering its employees.
[13] Section 121.021(10), F.S.
[14] See, s. 189.403(2), F.S., defining "dependent special district."
[15] Cf., AGO 79-74, in which this office stated that the officers and employees of a not-for-profit corporation that had the same governing board as the city were not covered under the Florida Retirement System.
[16] See, s. 121.031(1), stating that the division shall make such rules as are necessary for the effective and efficient administration of the retirement system.